IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 14, 2007

## PAUL GRAHAM MANNING v. STATE OF TENNESSEE

**Appeal from the Circuit Court for DeKalb County**
**No. 98-89     Leon Burns, Jr., Judge**

---

**No. M2007-00374-CCA-R3-CO - Filed February 7, 2008**

---

The Petitioner, Paul Graham Manning, appeals from the judgment of the trial court dismissing his petition for writ of error coram nobis. The trial court dismissed the petition because it was not timely filed and because the petition did not allege newly discovered evidence or make allegations which had not been previously raised or litigated. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Paul Graham Manning, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; William E. Gibson, District Attorney General; and Ben Fann, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In 2001, the Petitioner, Paul Graham Manning, was tried before a jury and convicted of first degree premeditated murder and felony reckless endangerment. See State v. Paul Graham Manning, No. M2002-00547-CCA-R3-CD, 2003 WL 354510 (Tenn. Crim. App., Nashville, Feb. 14, 2003), perm. to app. denied (Tenn. Dec. 15, 2003). This Court affirmed his convictions on direct appeal. See id. at *1. The Petitioner subsequently sought post-conviction relief, which was denied by the trial court. This Court affirmed the denial of post-conviction relief. Paul Graham Manning v. State, No. M2005-02876-CCA-R3-PC, 2007 WL 4116487 (Tenn. Crim. App., Nashville, Nov. 13, 2007).

On October 6, 2006, the Petitioner filed a petition for writ of error coram nobis. See Tenn. Code Ann. § 40-26-105. In his petition, the Petitioner alleges that he has newly discovered evidence

which, had it been presented at his trial, "[n]o sane, logical, jury could have or would have found him guilty of any crime." Upon motion by the State, the trial court dismissed the petition because it was untimely filed. The trial court further found that the petition did not allege any newly discovered evidence or make any new allegations which had not been previously raised and litigated. It is from the order of the trial court dismissing the petition that the Petitioner appeals.

The underlying facts, as established by the evidence presented at the Petitioner's trial, were summarized in detail in this Court's opinion adjudicating the Petitioner's direct appeal. See Manning, 2003 WL 354510, at *1-3. Briefly stated, the Petitioner's wife was killed by a shotgun blast to her torso inflicted at relatively close range. Id. Josh Manning, the fourteen-year-old son of the Petitioner and the victim, testified that he witnessed the Petitioner shoot and kill the victim following an argument. Id. at *1. Josh Manning called 9-1-1. Id. When officers arrived on the scene, they found the Petitioner crouched over the victim, saying, "I'm sorry" and "help her." Id. at *2. Dr. Charles W. Harlan performed the autopsy on the victim and testified that she died as the result of a shotgun wound to her abdomen. Id. The Petitioner testified that he did not know how his wife was shot. Id. at *3. He testified that he "woke up" beside her on the ground in the driveway. Id.

The Petitioner's petition for writ of error coram nobis is quite lengthy and rambling. The petition points to numerous allegedly inconsistent or erroneous statements contained within the medical records and autopsy report concerning the victim's death. The petition asserts that hospital records were changed or "switched to perpetrate the false belief that the supposed victim had died. When in fact, she had not!" The petition alleges collusion, perjury, and conspiracy between and among law enforcement officers, witnesses, hospital and medical personnel, prosecutors and the Petitioner's defense attorney. It alleges prosecutorial misconduct, defense misconduct, police misconduct, and judicial abuse of discretion. Moreover, it alleges that the conspiracy was formulated to "knowingly and intentionally, prosecute, convict, and imprison, a man they all knew to be innocent of any crime whatsoever."[1]

---

[1] This Court stated in its opinion affirming the denial of post-conviction relief:

We observe initially that all of Petitioner's post-conviction claims stem essentially from his unwaivering conviction that his wife, the victim in this case, is not dead. To that end, Petitioner contends that all actions taken by the trial court, the prosecution, the defense team, and the post-conviction court which contradict the existence of this fact violated Petitioner's constitutional rights to a fair trial and his ability to present a defense, and denied him the effective assistance of counsel at all stages of the proceedings. In addition, Petitioner alleges that all parties in the court proceedings or the investigation of his case conspired to "convict an innocent man."

Manning, 2007 WL 4116487, at *4.

As our supreme court has explained:

> The writ of error coram nobis is an extraordinary remedy available to those convicted of crimes who can show that newly discovered evidence relating to matters litigated at the trial may have resulted in a different judgment had it been presented at the trial.

Workman v. State, 41 S.W.3d 100, 105 (Tenn. 2001) (citing Tenn. Code Ann. § 40-26-105).

Generally, newly discovered evidence which is cumulative to evidence presented at trial, or serves only to contradict or impeach evidence introduced at trial, will not justify granting the petition unless the evidence would have resulted in a different judgment. See State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995). The purpose of this extraordinary remedy is to bring to the trial court's attention some previously unknown fact which if known at trial would have resulted in a different judgment. See id. at 374.

It is apparent that the various medical records upon which the Petitioner bases his claims are not "newly discovered." The existence of the records was known to the Petitioner and to his attorney at the time of his trial. Indeed, many of these records were introduced at trial by stipulation at the request of the Petitioner. Because the matters asserted in the petition for writ of error coram nobis could have been litigated at the trial of this case, they are not cognizable in an error coram nobis proceeding. See Tenn. Code Ann. § 40-26-105(b). We also note that the issues asserted in the petition for writ of error coram nobis were pursued in the Petitioner's post-conviction proceedings.

A petition for writ of error coram nobis must be filed within one year after the judgment of conviction becomes final in the trial court, notwithstanding the pendency of any appellate proceedings emanating from judgment in the trial court. See Tenn. Code Ann. §§ 27-7-103; 40-26-105; see also State v. Mixon, 983 S.W.2d 661, 670 (Tenn. 1999) (holding that "a petition for writ of error coram nobis must be dismissed as untimely unless it is filed within one year of the date on which the judgment of conviction became final in the trial court"). Here, the petition was filed more than five years after the judgment of conviction became final in the trial court.

We note that due process considerations may require that the statute of limitations for filing a petition for writ of error coram nobis be tolled under certain circumstances. See Workman v. State, 41 S.W.3d 100, 103 (Tenn. 2001). Our review of the record leads us to conclude that the Petitioner has not shown any grounds for tolling the statute of limitations based upon due process considerations.

**CONCLUSION**

We affirm the judgment of the trial court dismissing the petition for writ of error coram nobis because it was not filed within one year of the judgment of conviction becoming final.

_____
DAVID H. WELLES, JUDGE